The next case on our docket for today is United States v. Deshaun Williams. Case number 21-10357 and that's submitted on briefs. The next case after that is Chan v. Grady. That's number 21-164-64. That case is also submitted on the briefs. The next case for argument is United States v. Richard Parmer and this case is set for 10 minutes. We're signing for for the bill and Mr. Parmer we have Ms. Barrett. That's correct. Good morning, your honor. Okay and then from the government we'll hear from Ms. Volker. Yes, good morning, your honors. Good morning. So hey, thank you both for helping us out today. We'll proceed to the appellant's argument. Good morning, your honors and may it please the court. My name is Audrey Barron. I represent the appellant Richard Parmer and I am aiming to reserve two minutes for rebuttal if I could. Your honors, in the midst of a housing crisis countless low-income people in San Francisco and elsewhere live in untraditional housing arrangements such as single-family residences that have been divided into multiple private spaces. Low-income people like Mr. Parmer have an expectation of privacy in their homes and they're entitled to the full protection of the fourth amendment. They may not be able to build a private bathroom or build a private entrance but they can assert their expectation of privacy to the world by locking their doors when they leave home or by keeping all of their personal belongings in their locked rooms. Faced with the facts that San Francisco Police Department officers encountered here an objectively reasonable officer would have realized that although their search warrant authorized them to search a single family residence in fact they had encountered two separate private spaces and the warrant did not authorize them to search the private space of Mr. Parmer. The officers were constitutionally required to take the next step which is to seek out a search warrant for Mr. Parmer's space if they developed probable cause to do so. Counsel how were the how how was it that the officers would know there are two separate residents within residences within this department? Judge, well the first indicator to officers that they learned right away was that these two spaces had doors that locked from the outside. We know that officers knew that quickly because they conducted a protective sweep of the building and they had to kick in Mr. Crowder's door. It was locked and locking doors are significant because that's different from a typical single family home. That is a mechanism for someone to lock their door when they leave and indicate to the world this is my private space and you cannot enter as you please. There was a common living room with what you would expect to be in a living room and I believe a kitchen and they didn't really have knowledge about the knowledge that you suggest was critical until after they interviewed Mr. Parmer and that by that time they had already been in his apartment. Well Judge Corman, I'm glad you raised the the issue of the common living space because I think it points to the district court having actually applied the incorrect legal standard in this case. Garrison and Mena do not require indisputable evidence of separate living. In fact, Mena itself involved a single family residence with a common living room and a common shared kitchen. It was a single family residence that had been divided and Garrison tells us that the the overbreath of their warrant but what the district court did here was acknowledge the Garrison standard but in its analysis actually set a higher bar and required there to be indisputable evidence of separate living and this court should reverse at a minimum on that that basis alone because that's not what Garrison or Mena require. The district court actually acknowledged in its order that there were indicia of separate units. That's at page 30 of the excerpts but again said well that's not sufficient because there was also evidence of common living areas but there sort of inherently your honors there will always be indicia of common living in these situations of single family residences that have been divided but people can still create a private space within a single family residence. USV Cannon tells us even a guest room can require a separate warrant when someone develops an expectation of privacy in that space. I think you were for a door the officers enter a a unit and see doors that are outside that alone is enough to make it unreasonable or to require an officer to understand that it's separate living units. I'm sorry you cut out at the beginning of the question but I think I think I understand. I'm wondering if you're saying a door locked from the outside is sufficient to alert an officer that it's separate living units and that he would need search warrants. Your honor we're not asking the court to to assert a bright line rule. It is a fact specific inquiry looking at the the facts before these officers was it objectively reasonable. I think the locked door is a locked door. What other indicia were there when they entered into the room other than the locked door? What was it? Sure so your honor when after they they entered into the the rooms that they knew to have locked doors they encountered essentially mini kitchens. They would have when they first entered into the unit right they would have to know that they couldn't enter into those the indicia that they would see other than the locked door. Well I think your honor they they they kick in a door and they can can see what's inside. It was immediately apparent to kick in the door. Are you saying it was reasonable to kick in the door but once they kicked in the door and they saw a refrigerator then they should have known it was a separate unit and stopped searching. Is that what you're saying? I'm just wondering where how far this goes or what what rule you would have as a doc. Well here the the combination of inside visible to the officers was there were essentially mini kitchens and items that in a single family you would expect to see in a common area were in fact kept in these these private rooms. That was immediately apparent before seizing the the devices that became evidence in the case. So immediately officers can see that one of the rooms has a pantry, a crock pot, produce, mini fridges. Not the sort of thing you would anticipate finding in a bedroom in a single family you would expect. They entered Palmer's apartment or if you call it an apartment his room but they had they had already they had already questioned him before where the arguably his answers would have more clearly alerted them to the possibility that this was really a separate apartment. Your honor no the the district court found that by the time officers began the interview of Mr. Palmer they had seized incriminating evidence. So we are discussing facts that were apparent to the officers before the interview of Mr. Palmer. The the interview of Mr. Palmer certainly established that the the space was in fact private but even before that officer should a objectively reasonable officer should have been on notice that they had encountered two private spaces based on based on seeing doors that locked from the outside plus within it a indicia of private living people keeping what you would expect to be in a common space keeping in a private locked space and that combination should have been sufficient to alert officers that this was in fact two separate private spaces. Your honors I see I have a minute and a half remaining. I did want to note we we did appeal as well on the basis of insufficiency of the evidence on the possession conviction. We think that's well briefed and are prepared to submit on the briefs on that but I'm of course happy to answer the the court's questions and if there aren't additional questions now I would. Can I ask you one question about the remedy here? Is this a case where the exclusionary should be applied? Yes your honor the district court should have granted the the motion to suppress and excluded the the evidence that was found as a result of the search. As we discussed in the briefs the good faith exception does not apply here because there on its face there could there could not have been probable cause to search Mr. Palmer's private residence in the warrant. The existed so it certainly didn't lay out why they had evidence that he was using the suspect internet connection. Hasn't the supreme court at least in language in the Herring case by the chief justice suggested something beyond just the good faith exception that one has to ask whether or not the remedy is sufficiently so severe that it's reasonable to apply an exclusionary rule in order to in order to support the deterrence that normally derives from the application of the exclusionary rule. Well it is reasonable here to to expect exclusion. This as we note in the briefs there are thousands of people who live this way and as even the district court recognized officers are expected to understand that low-income people have an expectation of privacy as well and they need to be aware of what they're encountering when they're executing a search and stop a search when they reasonably should know that they have a search warrant that is overbroad. Thank you counsel and your time has expired for your planning. I'll give you two minutes for rebuttal. Thank you your honor. Now we'll hear from uh um Billy. Good morning your honors. May it please the court. Kelly Wolkar on behalf of the United States. This court should affirm the district court. While the government maintains that unit D was a single residence, the district court did not err in finding that the officers reasonably executed the search of unit D because they would not have been on notice that this was a multi-unit apartment until the interview of Parmer when he made explicit statements. We also believe that sufficient evidence supports the possession count but I'd like to circle back to why we think that this was a single residence and to answer some of your honors questions. To Judge Ikuda's point, what did the officers have in front of them before they interviewed Parmer, before they found the and here this is where I think we really need to take a step back and think about the uh particularity of the search warrant which as this court's cases make clear is really about the nature of the evidence sought and the type of offense that officers are investigating and the scope of the warrant is really determined based on that probable cause and here the officers knew that someone was downloading child pornography at a specific IP address and Comcast connected that IP address back to unit D. Not unit D1, not unit D2, but unit D and also not unit E for example. It identified unit D as a two-bedroom apartment within a multi-unit building. The officers had to search for any computers the type of evidence the type of instrumentality that would be used to connect to said IP address and also to search for routers within unit D and so I think that when you look at this court's cases that have decided what are single residences rather than multi-units it becomes clear that the facts in this case are nowhere close and that includes the Ayers case where it was an entire family's house and they searched not just the bedroom of the son but also the bedroom of the parents and they found incriminating evidence in the bedroom of the parents or the Ajani case which I think is even more similar to here where the officer the agents were looking for evidence of a cyber crime or a computer-based crime that in that case related to even though she was not a target of the search warrant before the agents went in to execute the search warrant this court found in Ajani in 2006 that the probable cause supported the the breadth of the warrant and was sufficiently particular because the probable cause was for evidence that may have existed on the computers and it did not necessarily matter who was residing in the house because that probable cause was connected to the evidence which would have existed on computers in a particular place which was that residence and we argue the same is true here the probable cause here is that someone was downloading child pornography at a specific IP address that was connected to unit D a particular place and would have been found on computers or electronic devices and the officers also had in the search warrant that they would do a quick on-site analysis to essentially eliminate if any of the devices did not have child pornography so that they could return those devices back to the individuals and so for that reason we believe that unit D was a single residence but again the district court found that at a certain point in time looking at the reasonable execution that the statements of Palmer might have changed that and of course the government's position is that the subjective statements of the defendant I think it's placing a lot of weight on the subjective statements of defendant to have that transfer however that being said when you look at what was before the officers if they did reasonably execute they did the Comcast search which said unit D they ran an accurate search which not only said unit D but showed only one person living there and showed that there were other units that had different types of structures they did an exterior analysis they saw that it was unit D and next door was unit E there were three garages on the other side of the building was unit A opposing counsel says it was enough once you saw the lock on the bedroom door and entering the bedroom seeing the mini recreator and other foods and indicated that somebody was eating and cooking in the room but that was enough to alert the officers and it was a separate residence why isn't that enough your honor I would put to point to Maryland versus Garrison where I would say there was far more indicia of two separate apartments on the third floor but I would also point to the supreme court's guidance that we and the court should provide latitude to officers as they are executing the search warrant and that is what the district court below found that in the face of ambiguous evidence ambiguous evidence as to whether it was a shared space or a separate space the officers acted reasonably objectively reasonably in going through I would also more directly to your point your honor point out that while there were locks on the outside of the door the officers did search Parmer's unit first and it was either unlocked or open because they did not need to breach his door and although appellant points to many items within the photo that they provided of the essentially pantry style with the various food items that she mentioned was actually in Mr. Crowder's room which they searched second and so they had already seized Parmer's devices at the time but I want to take a step back and say even though the facts of this case which I think the district court walked through quite persuasively do not favor Parmer's argument here the the analysis to have the officers I guess to judge Corman's point to require to require officers on evidence such as whether or not there's a crock pot in someone's room to make a determination in the moment that that is a separate unit or simply because there are locks on the doors I would purport that I would put forward that people can put locks on the on doors for all sorts of reasons and I think that that strains what the fourth amendment requires and again this is a totality of the circumstances standard and I think that the officers acted reasonably in face of their pre-search knowledge and what they discovered as they went through and I think that this court's prior cases thoroughly support the district court's conclusion in that regard. Okay I think if that concludes Ms. Volker's argument I hear no questions but we let Ms. Barron have the extra time I said she can. Thank you your honor if I may just say that for all the reasons the government asked that this from the district court and thank you for your time. Thank you very much. Thank you your honors I want to address council's argument both that the residence was not Mr. Parmer's residence was not private and that there was probable cause in the warrant but first to to clarify about the execution of the search garrison didn't involve doors that locked from the outside or at least the opinion is silent as to that the only precedent I'm aware of in our circuit that involves doors that locked from the outside is MENA and of course that in that case the court found that the officers should have been on alert. There was also no question below because before entering to conduct the search they were aware that a large number of persons lived in the house. There was your honor pre-search knowledge that provided additional context but MENA did not require pre-search context that that's relevant to what officers knew at the moment but they also walked in and saw doors that were padlocked from the outside. Council says that Parmer's door was apparently not locked because the officers didn't break into it is that correct or incorrect? That is correct your honor Parmer's door was open because he was home Crowder's door was locked and officers but importantly officers knew that immediately because they conducted a protective sweep of the entire unit and they could immediately see the contents of the rooms as well and to clarify Mr. Parmer also had kitchen items including a fridge and others. I did in very importantly your honors want to address the concept that this was not a should not be considered a private space or that there was probable cause in the warrant to support the search. Cannon tells us that in assessing whether there's an expectation of privacy in the space what matters is what exists today not what officers thought at the time they were getting a warrant but whether the individual has sought to preserve something as private and society is prepared to recognize that as reasonable. The court here considered all the evidence and including that Mr. Parmer had a lease including that Mr. Parmer was assigned to live with this stranger in this house and correctly found that this was a private space. The idea that and I see that I'm running out of time if I could quickly conclude the idea that there was probable cause to search a multi-unit building because an IP address is connected to a router is a novel theory that has no legal support. The cases that the government cites either deal with a single family residence or a multi-unit residence in which the defendant had complete access and control to all of the units. Neither of those things is present here and to rule that simply the possibility that someone could access the internet is sufficient probable cause would create significant privacy concerns for a huge number of people who have a shared internet connection. Well you're not suggesting there was anything wrong with the warrant. We well your honor we didn't challenge whether the warrant whether officers should have known at the time of getting the warrant that it was over abroad but the warrant was in fact over abroad. It described a single family residence and in reality there were there were multiple units there. What the government is arguing though is that well the IP address was connected to the whole building so they should be able to search the whole building but Mr. Parmer is no differently situated than the neighbors in unit c or unit e. That's not what they were arguing they got a warrant for a particular apartment. Yes your honor but then upon entering realize or should have objectively realized that it wasn't a single family residence there were two and then you have to have probable cause to search each of them. What was the evidence that Mr. Parmer was using the internet connection? He could have been but so could the neighbors in unit e. They could have been officers needed to do the investigative work to develop probable cause and they easily could have they could have interviewed witnesses they could have done forensic search and I would point the court to U.S. v Norris on this point which is exactly what happened in in that case. Okay counsel thank you you're well over your time. Thank you your honors. Unless Judge Ikuda or Judge Corman have a further question? No. The Parmer case now shall be submitted. I want to thank both counsel for their excellent advocacy which we appreciate. Thank you. Thank you your honors. Thank you your honors. Thank you.
judges: GOULD, IKUTA, Korman